### AQUILLA J. DAVIS ET AL.
### v.
### N. G. NICHOLS ET AL., SCHOOL DIRECTORS.

*Eminent Domain—Site for School House—Mandamus to Compel Condemnation of.*

1.   Land held for a public use can be condemned for another public use when the latter is different from the former, and not inconsistent with, or destructive of, the rights of the public under the first.
2.   The public square of a village can not be appropriated as the site for a school house.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of Tazewell County; the Hon. N. W. GREEN, Judge, presiding.

Mr. B. S. PRETTYMAN, for appellants.

Messrs. WILLIAM DON MAUS, W. R. CURRAN and T. N. GREEN, for appellees.

CONGER, P. J.    Appellants filed a petition, alleging that they were citizens and taxpayers of school district No. 1, etc.;

that the school house in such district was inadequate; that there had been a legal election by the voters of the school district to locate a site for a new school house; that at such election the northwest quarter of the public square of the village of Tremont was chosen as the site for a new school house; that the directors had applied to the president and trustees of said village to agree to a compensation for such ground; that the title to the square was in said president and trustees for said village; that they refused to agree to anything in relation thereto; that the school directors refused to take measures to condemn said ground for a school house site; and prayed that a writ of mandamus issue requiring said school directors to immediately proceed as required by law to have condemned, and have compensation for such school house site determined as required by the law of eminent domain, etc.

A demurrer was filed to the petition, which was sustained and the petition dismissed.

Several questions are raised by the demurrer and the arguments of counsel, but we do not deem it necessary to notice but one of them, i. e., "that the site alleged to have been selected for a school house is already used and held and occupied for a public use and purpose, and it would be unlawful to use it for a school house." Upon this point appellant's counsel in his brief says:

"And the fee in land, held or taken for one public use may be condemned to another public use if that other is a different use. If the new use is for the benefit of the public, whether the change will be for the benefit of the public is a political question to be determined by the law-making power, and the authorized submission of the selection of a school house site to a popular vote is a determination by the people that it is for the public benefit; and that it is a new use can not be questioned; and the law requiring the directors to proceed and condemn it under the eminent domain law for that new use is a clear determination of it."

He cites the following cases as the authority for his position. M. C. Ry. Co. v. C. W. D. Ry. Co., 87 Ill. 317; Lake

Shore & M. S. Ry. Co. v. C. W. I. R. R., 97 Ill. 506; C. & M. W. Ry. Co. v. C. & E. R. R. Co., 112 Ill. 589; People ex rel. v. Walsh, 96 Ill. 232. The first three of these cases hold that property appropriated by one railroad company does not prevent another company from condemning portions of the same for a new and different public use.

This doctrine is well established in this State; otherwise, as the court say in one of their opinions, one railroad could never cross another without consent.

In the Walsh case, *supra,* it is held that the Legislature may transfer the control of streets of a city or village to park commissioners to be by them improved and controlled for boulevard and park purposes, where such purposes are not inconsistent with their use for ordinary travel.

The general rule, we apprehend, is, that land held for a public use, can be condemned for another public use when the latter is different from the former and not inconsistent with or destructive of the rights of the public under the first; that portions of the land of one railroad, under certain circumstances, should be used for another public use, such as a railroad or public street crossing, is not inconsistent with or destructive of the first use, or of the rights of the public.

In the case at bar, however, the public square of the village of Tremont is held in trust for the public use, and it can not be appropriated to any other use inconsistent with or destructive of the first; that the building of a school house upon the public square of a village, whether such square be left open for public travel across it, or inclosed and used as a park, would be inconsistent with the original use, can not be doubted.

Suppose the voters of a school district were to select as a site for a new school house, the middle of a public street or the court house of the county; would it seriously be contended that such site could be enforced? Princeville v. Auten, 77 Ill. 326; Jacksonville v. J. R. W. Co., 67 Ill. 541.

We are of opinion the demurrer to the petition was properly sustained.

*Judgment affirmed.*